# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Action No. 5:08-cr-40(HL) |
| | : | |
| **HAYWARD COLLIER,** | : | |
| | : | |
| **Defendant.** | : | |

_____

## ORDER

This matter is before the Court on the motion of Defendant Hayward Collier to dismiss Counts Nine and Twelve of the indictment (Doc. 186).  After consideration and as discussed below, the Court grants, in part, and denies, in part, the motion.

## I.      Introduction

Hayward Collier was indicted along with four others in a 19-count indictment. Collier was charged in only two counts of the indictment:  counts nine and twelve. In count nine he was charged, along with Defendant Brooks E. Blitch, III, with honest services fraud conspiracy in violation of 18 U.S.C. §§ 1341, 1343, 1346, 1349 and 18 U.S.C. § 2. In count twelve he was charged alone with perjury in violation of 18 U.S.C. § 1623.  He contends that both counts nine and twelve should be dismissed because they fail to allege facts sufficient to support the elements of the offenses charged in each count.  The Court will address each of the two counts separately.

## II.     Count Nine

### A.    Failure to Allege Facts Showing a Scheme to Obtain Money

The indictment alleges in count nine that while Blitch was a superior court judge in the Alapaha, Georgia, Judicial Circuit, Collier, Blitch, and others conspired "to obtain and attempt to obtain monies of the taxpayers of the State of Georgia by fraud and false pretenses and to divert and attempt to divert these monies for the personal benefit of the conspirators and to deprive and attempt to deprive the citizens of the State of Georgia of the honest services of the co-conspirators." (Indictment at 25.)  The indictment alleges that Collier received money and other consideration in exchange for introducing persons to Blitch and that these persons were seeking inappropriate judicial assistance in ex parte meetings with Blitch. (Indictment at 26.)

According to the indictment, Collier "often attends court proceedings in Berrien County and meets with Judge Blitch in order to influence the outcome of criminal cases."  (Indictment at 30, ¶ 20.) The indictment alleges one instance on February 10, 2006, when  Collier allegedly accepted $350 from an individual whose probation terms were later altered by Blitch without notice to the district attorney and without a hearing.  (Indictment at 30-31, ¶ 21.)  The indictment also alleges an instance on January 10, 2006, when Collier received $300 from an incarcerated individual after Collier contacted Blitch on the individual's behalf, although the indictment does not indicate whether that person received any benefit as a result of the contact.  (Indictment at 31, ¶ 22.)  The indictment details numerous other

2

instances of improper contacts with Blitch by other individuals, all under the heading of "overt acts," however, none of the other acts alleged specifically mention Collier as having been involved in the contacts.

In his motion, Collier first argues that count nine should be dismissed "because it fails to state any facts to support the fundamental allegation that Defendants Blitch and Collier conspired to engage in a fraudulent scheme to obtain money from the taxpayers of the State of Georgia." (Doc. 186, Br. at 2.) The indictment alleges, under the heading "The Object of the Conspiracy," as follows:

> It was the object of the conspiracy to obtain and attempt to obtain monies of the taxpayers of the State of Georgia by fraud and false pretenses and to divert these monies for the personal benefit of the conspirators and to deprive and attempt to deprive the citizens of the State of Georgia of the honest services of the co-conspirators.

(Indictment at 25.) Collier's argument treats the foregoing paragraph as alleging two objects of the conspiracy, the first to obtain monies of the taxpayers by fraud and false pretenses, and the second to deprive the citizens of the honest services of the co-conspirators. He contends there are no facts in the indictment that support the first object of the conspiracy. Collier apparently takes no issue with the second object of the conspiracy. Nevertheless, he contends because the indictment is insufficient as to one object of the conspiracy, all of count nine must be dismissed. (Doc. 186, Br. at 2.)

Section 1341 of Title 18 makes it unlawful for any person to use the mails or an interstate carrier to carry out "any scheme or artifice to defraud, or for obtaining

3

money or property by means of, among other things, false or fraudulent pretenses."
18 U.S.C.A. § 1341 (West Supp. 2008).  Section 1343 of Title 18 criminalizes the
same conduct when carried out by means of wire communication.  18 U.S.C.A.
§ 1343 (West Supp. 2008).

In 1987, the Supreme Court of the United States held that the mail fraud
statute did not prohibit schemes to defraud citizens of their intangible right to honest
and impartial government.  McNally v. United States, 483 U.S. 350, 107 S. Ct. 2875
(1987).  In McNally, defendants were two state officers who arranged for their
agencies to receive a share of insurance premiums that were paid by the
Commonwealth of Kentucky, and thereby profited from the commissions.  The Court
noted that the jury was not required to find that the Commonwealth itself was
defrauded of any money or property.  Instead, the allegation was that the state
officials failed to disclose their financial interest in the commissions, so that the
people of Kentucky had been deprived of their right to have the Commonwealth's
affairs conducted honestly.  The Court found that such conduct was not criminalized
under the mail fraud statute.

In  1988, in response to the decision in McNally, Congress enacted 18 U.S.C.
§ 1346, which states in its entirety:  "For the purposes of this chapter, the term
'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the
intangible right of honest services."  Because § 1346 does not stand alone to
criminalize conduct, it must be pleaded in conjunction with §§ 1341 or 1343 to set

4

forth a statutory violation. *See, e.g.*, <u>United States v. Lopez-Lukis</u>, 102 F.3d 1164 (11th Cir. 1997) (construing § 1346 in conjunction with § 1341).  In <u>Lopez-Lukis</u>, the United States Court of Appeals for the Eleventh Circuit noted that the Eleventh Circuit and the former Fifth Circuit "consistently have held that schemes by government officials to deprive the public of its right to their honest services, when a mailing is involved, constitute mail fraud."  <u>Id.</u> at 1169.

As a result of the enactment of § 1346, and consistent with the decision of the Eleventh Circuit in <u>Lopez-Lukis</u>, a violation of the mail and wire fraud statutes can be obtained by showing that a defendant schemed to deprive another of the intangible right of honest services, without also having to show that the defendant deprived another of money or property.  Thus, the allegations of the indictment, which set forth facts tending to show that Blitch and Collier and others conspired to have Blitch make decisions based on his own personal interests–rather than on the best interest of the public–are sufficient to allege a violation of conspiracy to commit honest services fraud as set forth at § 1346, in conjunction with §§ 1341, 1343, and 1349, even without a corresponding allegation that monies or property were obtained.

The Government also appears to contend, however, that monies or property were obtained under a scheme to defraud.  In responding to Collier's motion, the Government argues that "Blitch was paid while not performing the work fairly and honestly."  (Doc. 193, Br. at 6.)  The Government contends, therefore, that "the

5

taxpayers of the State of Georgia were defrauded of the monies paid to him in salary." (Doc. 193, Br. at 6.) The Government also adds: "Additionally, Collier received monies from those persons seeking mitigation of criminal charges that he introduced to Blitch." (Doc. 193, at 6.) The Government thus appears to contend that the public was deprived of the tangible value of money, in addition to the intangible right to Blitch's honest services, both because Blitch retained his salary while engaging in dishonest conduct and because Collier obtained money from individuals as a result of his contact with Blitch. The Government thus appears to be seeking convictions under § 1346 in conjunction with §§ 1341 and 1343, and under §§ 1341 and 1343, without reference to § 1346.

It appears to the Court that the Government's references to monies obtained is an attempt to criminalize the same conduct twice:  first as a violation of §§ 1341 and 1343 because of Blitch's acts of continuing to receive a salary while acting in his own interests, and second as violation of § 1346 in conjunction with §§ 1341 and 1343 because of Blitch's conduct of acting in his own personal interests instead of in the interest of the public. If so, such allegations would be duplicitous and contrary to the Supreme Court's holding in McNally.

As the Eleventh Circuit explained in Lopez-Lukis, the crux of the honest services fraud theory "is that when a political official uses his office for personal gain, he deprives his constituents of their right to have him perform his official duties in their best interest." Lopez-Lukis, 102 F.3d at 1169. The court added, "If the official

6

instead secretly makes his decision based on his own personal interests–as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest–the official has defrauded the public of his honest services." Id. Given the foregoing definition, saying, as the indictment does, that Blitch retained his salary while engaging in such dishonest conduct is the same as saying that Blitch made decisions based on interests other than those of the public. And, consistent with the decision in McNally, such allegations may only be charged under § 1346, in conjunction with §§ 1341 and 1343. Despite the use of the word "money" in reference to Blitch maintaining his salary, the allegations are nothing more than allegations of intangible acts of defrauding the public of honest services.

In view of the foregoing, therefore, the Court finds that to the extent that count nine of the indictment seeks to charge Collier and others with conspiring to commit mail or wire fraud alone, rather than as an honest services fraud offense, the allegations of the indictment are improper and must be stricken. Insofar as count nine of the indictment seeks to charge Collier and others with conspiring to commit honest services fraud, the indictment is proper. Count nine will need to be redacted before trial but the errors noted by the Court do not warrant dismissal of all of count nine. To the extent that count nine alleges a conspiracy to violate §§ 1341 and 1343, independent of any reference to § 1346, the relevant portions of the indictment are hereby dismissed.

**B.     Failure to Allege Use of the Postal Service or Wire**

Collier contends the indictment fails to allege that the postal service or wire were used, or that these means were used for the purpose of executing the scheme or artifice required by §§ 1341 and 1343.  The indictment fails to allege that Collier, himself, used the mail or the wire, however, the indictment is replete with allegations that Blitch used the telephone to accomplish the object of the conspiracy, i.e., to alter sentences and to influence the results of cases in a manner not permitted by law. A telephone call can be sufficient to satisfy the requirement of an interstate wire communication under § 1343.  *See, e.g.,* Hawkins v. United States, 305 F.2d 658, 659 (5th Cir. 1962) (holding that use of a telephone in the settlement and payment of an insurance claim was sufficient to support a conviction for wire fraud).[1]  In addition, the indictment alleges one instance in which the mail was used to accomplish the ends of the conspiracy.  (Indictment at 38-39, ¶ 40.)

To convict a defendant for the offense of conspiracy, it is not necessary to prove that the defendant was an active participant in every phase of the conspiracy. The Government need only prove that the defendant is a party to the general conspiratorial agreement.  United States v. Russell, 703 F.2d 1243, 1249-1250 (11th Cir. 1983).  Thus, the Government need not establish that Collier used the mail or the wire to accomplish the ends of the conspiracy.  Indeed, under § 1349, which

---

[1] As of September 30, 1981, the United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

differs from the general conspiracy provision set forth at 18 U.S.C. § 371, the Government need only allege an agreement to commit an unlawful act under the mail fraud chapter. *See generally* United States v. Shabani, 513 U.S. 10, 115 S. Ct. 382 (1994) (holding that in order to establish a violation of 18 U.S.C. § 846, which contains language nearly identical to that in 18 U.S.C. § 1349, the Government need not prove the commission of any overt acts in furtherance of the conspiracy, and noting that the essence of the conspiracy is the agreement to commit the unlawful act). The indictment is sufficient to satisfy these requirements.

### III.   Count Twelve

In count twelve, Collier is charged with violations of 18 U.S.C. § 1623. Section 1623 makes it an offense for anyone to knowingly make a false material declaration under oath in any proceeding, among others, before a grand jury. Section 1623 is contained within the "Perjury" chapter of the United States Code.

Collier takes exception to the fact that the indictment labels count twelve as a "perjury" offense, rather than as a "false declarations" offense. The Court finds this argument to be without merit. The offense is one of three found under the chapter heading of "Perjury" in the Code. Thus, to label the offense as "perjury" is not error, nor does the Court believe that use of the term "perjury" would be prejudicial to Collier. Moreover, the purpose of the indictment is to put the defendant on notice as to the charges against which he must defend and the indictment is sufficient in that regard.

Collier also contends that the instances of alleged false declarations listed in the indictment do not demonstrate that they were knowingly false, or material to the issues before the grand jury, as required by the statute.  The Court also finds this argument to be without merit.

The issues that are the subject of count twelve pertain to the manner in which Blitch handled the cases that were before him, specifically whether he acted on those cases in a manner inconsistent with the law and his duties as a superior court judge.  The information that was sought by the questions that are presented in count twelve was material to the grand jury's investigation into such conduct.  Moreover, a reasonable jury could find that the statements allegedly made by Collier to the grand jury were knowingly false.  Accordingly, the Court finds that the indictment is sufficient to withstand dismissal and Collier's Motion is denied as to count twelve.

## IV.    Conclusion

The motion to dismiss is granted insofar as the Government attempts in count nine to charge Collier with conspiring to violate §§ 1341 or 1343, independent of any allegations under § 1346.  The indictment will be redacted to reflect the same.  The motion is otherwise denied.

So ordered, this the 12th day of January, 2009.

<u>*s/  Hugh Lawson*</u>
Hugh Lawson, Judge

mls

10